IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ROSE WOODS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 3:10-cv-0065 |
| ) | |
| AHF/CENTRAL STATES, INC., ) | Judge Thomas A. Wiseman, Jr. |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff Rose Woods[1] filed this suit alleging that her former employer, defendant AHF/Central States, Inc. ("AHF"), violated the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.*, by failing properly to compensate Woods for overtime work. Woods also asserts that AHF is liable to her under various state-law theories of recovery including unjust enrichment/quantum meruit, breach of agreement, and violation of the Tennessee Wage Regulation Act for failing to fully compensate her for all work performed while she was employed by AHF.

Now before the Court is AHF's Motion for Summary Judgment (Doc. No. 25), in which the defendant asserts that Woods' FLSA claim fails as a matter of law on the basis that the plaintiff cannot establish a *prima facie* case of a violation of the FLSA, and that the state-law claims should be dismissed as well. The motion has been fully briefed and is ripe for consideration.

For the reasons set forth herein, the Court will grant the motion for summary judgment as to the FLSA claim, and will decline to exercise supplemental jurisdiction over the remaining state-law claims.

### I. STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The evidence and justifiable inferences based on

---

[1] Woods originally filed this action as a collective action. She has now elected to pursue this case as an individual action and has withdrawn her motion for class certification.

facts must be viewed in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 460 (6th Cir. 2001).

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party can prove the absence of a genuine issue of material fact by showing that there is a lack of evidence to support the nonmoving party's case. *Id.* at 325. This may be accomplished by submitting affirmative evidence negating an essential element of the nonmoving party's claim or by attacking the nonmoving party's evidence to show why it does not support a judgment for the nonmoving party. 10a Charles A. Wright et al., Federal Practice and Procedure § 2727 (2d ed. 1998).

Once a properly supported motion for summary judgment has been made, the "adverse party may not rest upon the mere allegations or denials of [its] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.

## II. FACTUAL BACKGROUND

AHF operates Belcourt Terrace Nursing Home ("Belcourt Terrace"), which is located in Nashville, Tennessee, and McMurray Hills Manor ("McMurray Hills"), which is located in McMurray, Pennsylvania. Plaintiff Rose Woods worked in Belcourt Terrace's Nursing Department as a PRN charge nurse from May 2007 through March 2009.

There is no dispute that, pursuant to AHF's policy, any employee who worked "over five (5) continuous hours [would] normally be provided with a (1/2) hour unpaid lunch period." (Woods Dep. Pt. 1, Ex. 1 § III.E.; Doc. No. 28-1, at 72.) Although the employee handbook also provides that hourly non-exempt employees "MUST CLOCK OUT FOR LUNCH" (*id.*), in actual practice, the only time an employee would clock out for lunch would be if the employee left the premises. (Vermillion Dep. 58:16–19.) For

employees who take their lunch break on the premises, AHF's employee time clock automatically deducts thirty minutes from each employee's hours for a given day, even when the employee is not able to take her meal breaks or her meal breaks is interrupted. Woods alleges that she regularly was unable to take a meal break, or had an interrupted meal break, and therefore was not accurately compensated for her time.

Woods concedes that AHF has a policy for filling out a "mispunch" form to correct the time sheet entry any time it contained an error. Such errors include situations where employees forget to clock in or clock out, or are unable to take their uncompensated lunch breaks. Woods concedes that she was aware of that policy (Woods Dep. Pt. 2, 16:16–17 ("We all knew that if you had a problem with the time, you fill out a mispunch slip."), but also alleges that AHF did not abide by that policy. Specifically, Woods claims that when she first began working at Belcourt Terrace, she would fill out a mispunch form to indicate she had missed her meal break, but that, despite doing so, her time sheets were never actually corrected and she still would not be compensated for the missed meal period. As a result, Woods avers, she gave up and stopped filling out mispunch forms for the days she missed her meal breaks. She also contends that she complained repeatedly to her supervisor, Barbara Adkins, Director of Nursing, and to the Administrator of Belcourt Terrace, Brian Vermillion, about the fact that she was unable to take lunch breaks, but nothing was ever done about this problem.

Woods testified in her deposition that she primarily was scheduled to work second shift (3:00 p.m. to 11:00 p.m.) or third shift (11:00 p.m. to 7:00 a.m.), and that she worked first shift (7:00 a.m. to 3:00 p.m.) "very seldom." (R. Woods Dep. Part 2, 53:3.) Woods also testified that she was ordinarily scheduled to work three shifts per week, but on occasion would work only one or two shifts in a given week. She testified that she "rarely" worked more than three shifts a week, and therefore rarely worked forty or more hours in a given week. (Woods Dep. Pt. 2, 86:15–21.) Woods could not estimate how many weeks during her two-year tenure with AHF she had worked forty or more hours in a one-week period. Based on the documentary evidence in the Court's record, however, it appears that Woods worked five eight-hour shifts during only one week while she was employed by AHF, from the week

beginning on Sunday, July 6, 2008 through Saturday, July 12, 2008.[2] (Pl.'s Ex. B, Doc. No. 36-2.) Woods' time sheet for that week shows that she clocked in and out on July 6 at 6:51 a.m. and 3:24 p.m., respectively. According to Brian Vermillion, the company's time clock would have rounded up or back depending on how close to the quarter hour an employee clocked in or out, so the system would have interpreted these times to mean Woods clocked in at 6:45 and clocked out at 3:30, and so was present on the premises for 8.75 hours. However, the system also automatically deducted thirty minutes for her lunch break, so she was credited with working 8.25 hours that day. Similarly, she worked from 7:03 a.m. until 3:26 p.m. on July 7 (8.5 hours) and was credited for 8 hours, compensating for her lunch break; from 6:39 a.m. until 3:27 p.m. on July 8 (8.75 hours, credited as 8.25 hours); from 6:52 a.m. until 3:08 p.m. on July 11 (8.5 hours, credited as 8 hours); and from 6:45 a.m. until 3:18 p.m. on July 12 (8.5 hours, credited as 8 hours). Woods was credited with working a total of 40.5 hours that week, after the half-hour meal break was automatically deducted each day, and she received overtime pay for the .5 hours worked in excess of 40. (*See* Pl.'s Ex. A, Doc. No. 36-1.)

Woods also insists that the time sheet also reflects that she "worked on second shift at least one day that week." (Pl.'s Resp. to Def.'s Statement of Undisp. Facts ¶ 5, Doc. No. 37, at 7.) Contrary to Woods' assertion, however, the referenced time sheet indicates that Woods worked first shift each day she worked that particular week, but that her shift overlapped into the second shift—that is, she worked past 3:00 p.m.—for eight to twenty-eight minutes past 3:00 p.m. each shift, for a total of one hour and forty-five minutes for the week. (*See* Pl.'s Ex. B., Doc. No. 36-2.)[3]

The reason Woods seeks to prove she worked at least one second shift that week is because Woods also asserted in her answers to the defendant's interrogatories that she missed 100% of her meal breaks while working second and third shift, and approximately 75% of her meal breaks while working

---

[2] Bradley Towns, AHF's Vice President of Operations, testified that the work week at Belcourt Terrace runs from 7 a.m. Sunday until 6:59 a.m. the following Sunday. (Towns Dep. 44:4–11.)

[3] AHF claims that the document Bates-stamped AHF 1708 (Plaintiff's Ex. B) does not actually support Woods' contention that she worked at least forty hours that week, because Woods also testified that at times she was paid for eight hours even though she worked less time. Woods' testimony, however, was that she was paid for starting at the beginning of a shift even if she was called in mid-shift only on very few occasions, and that this generally occurred when she was called in to work second shift. (Woods Dep. Pt. 2., 72:7–74:7.) The evidence in the record is not sufficient to give rise to an inference that Woods worked less than is indicated by the clock-in and clock-out times on her time card.

first shift. (Doc. No. 28-2, at 29–30, Pl.'s Resp. Interrog. No. 13.) When questioned about that interrogatory response during her deposition, however, Woods stated that she was "just guessing with the 75 percent on the first shift. I was guessing how many it was." (Woods Dep. Pt. 1, 69:9–10; *see also id.* 69:18–20 ("I don't remember. I was guessing when I put 75 percent on the day shift. But the other ones [second and third shift] are right.").) She also testified that she could not recall any particular date on which she failed to take a meal break while working on first shift, and she did not keep a journal or in any other way record what days she missed a lunch break while working first shift.

For purposes of its motion for summary judgment, AHF does not dispute Woods' contentions that she frequently did not have time to take a meal break based on her job duties, that she regularly and repeatedly performed work for which she was not compensated, that it was "extremely common" for hourly employees to perform compensable work for AHF during their uncompensated meal breaks, that Woods' lunch breaks were frequently interrupted and she was routinely not relieved of her job duties during meal breaks, that she complained multiple times to Brian Vermillion and Barbara Atkins regarding lunch breaks and staffing issues, and that despite these complaints, AHF did nothing to ensure that hourly employees were completely relieved of their work duties during their uncompensated meal breaks. Likewise, for purposes of its motion, AHF does not dispute that it never explained to Woods or other employees what constitutes a compensable meal break under the FLSA, and that AHF does not have a written policy explaining what constitutes an interrupted meal period so that employees know whether they should be compensated for the automatically deducted time.

## III. ANALYSIS AND DISCUSSION

Congress enacted the FLSA in 1938 to ensure a "'minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a). The statute provides that covered employees who work more than forty hours per week are entitled to overtime pay at a rate of one and a half times the employee's normal hourly rate. 29 U.S.C. § 207(a)(1). To make a case for overtime compensation under the FLSA, a plaintiff "must prove by a preponderance of evidence that he or she 'performed work for which he [or she] was not properly compensated.'" *Myers v. Copper Cellar Corp.*, 192 F.3d 546, 551 (6th Cir. 1999) (citing A*nderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–87

6

(1946), *superseded by statute on other grounds as stated in Carter v. Panama Canal Co.*, 463 F.2d 1289, 1293 (D.C. Cir. 1972)).

The FLSA regulations define "bona fide meal period," and provide that employers are not required to pay employees for such meal periods:

> Bona fide meal periods are not worktime. . . . These are rest periods. The employee must be completely relieved from duty for the purposes of eating regular meals. . . . The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. . . .

29 C.F.R. § 785.19(a). Generally speaking, if an employee required to perform "substantial duties" for the benefit of her employer during her lunch break, the employee must be compensated for that time. *See Hill v. United States*, 751 F.2d 810, 814 (6th Cir. 1984) (approving the district court's "conclusion that appellant's meal period is not compensable because he was not required to perform any activities that could be characterized as substantial duties").

Federal jurisdiction in this case is premised upon a violation of the FLSA. The plaintiff here may prove a violation of the FLSA only if she performed overtime work for which she was not properly compensated, and she may only do that, in this particular case, if she can establish that, during the one week of her employment with AHF during which she demonstrably worked at least forty hours, she was required to work through her lunch break at least once, and therefore was not fully compensated for her overtime hours.

Even when all inferences are drawn in favor of the plaintiff in this case, however, the evidence is simply not sufficient to establish that an FLSA violation occurred at all. As previously indicated, Woods has only shown that she worked at least forty hours during one particular week of her employment, from Sunday, July 6, 2008 through Saturday, July 12, 2008. During that week, she worked first shift each of the five days she worked. She has estimated that she missed her meal breaks approximately 75% of the time that she worked first shift, but she admitted in her deposition that this estimation was simply a guess, and that she really does not know how frequently she missed her meal breaks while working first shift. (*See* Woods Dep. Pt. 1, 69:9–20.) She did not keep any record of the days she missed her meal breaks, and she did not fill out "mispunch" forms for any day that particular week. In other words, there is not enough evidence in the record from which a reasonable jury could conclude that Woods was required to

work through lunch any particular day during the week of July 6–12, 2008. To reach such a verdict would require nothing less than raw speculation. As a result, AHF is entitled to summary judgment in its favor as to Woods' FLSA claim.

In addition, having concluded that dismissal of plaintiff's sole federal claim is appropriate, the Court will decline to exercise supplemental jurisdiction over Woods' remaining state-law claims and will therefore dismiss those claims without prejudice, pursuant to 28 U.S.C. § 1367(c)(3).

**IV.    CONCLUSION**

The evidence construed in the light most favorable to the plaintiff is insufficient to support her claim of an FLSA violation. The Court will therefore grant the defendant's motion for summary judgment as to that claim, and will dismiss without prejudice the remaining state-law claims. An appropriate Order will enter.

Thomas A. Wiseman, Jr.
Senior U.S. District Judge